**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| WILLIE CLAY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 19-cv-02412 |
| v. | ) | |
| | ) | Judge Andrea R. Wood |
| THOMAS DART, et al., | ) | |
| | ) | |
| Defendants. | ) | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

While detained at the Cook County Jail, Plaintiff Willie Clay began experiencing a toothache. Clay claims that he waited nearly a month before being evaluated by a dentist and that, as a result of the delay, he experienced unnecessary pain. For that reason, he has brought the present putative class action pursuant to 42 U.S.C. § 1983 on behalf of himself and similarly situated inmates against Defendants Thomas Dart, in his official capacity as the Sheriff of Cook County, and Cook County. The Second Amended Complaint alleges that Clay's assigned dental clinic at the Cook County Jail maintained grossly deficient scheduling and staffing policies that denied constitutionally adequate medical care to inmates. Now, Clay moves for class certification (Dkt. No. 60) and to compel Cook County to produce certain documents concerning the alleged scheduling and staffing policies (Dkt. No. 71). For the reasons that follow, both motions are granted.

**BACKGROUND**

The following facts are uncontested and taken from the record.

Clay was an inmate at the Cook County Jail from January 2016 through April 2019. From November 1, 2018 to January 10, 2019, Clay was housed in Division 6. Inmates in that division

who need health services, including dental care, are instructed to submit a health service request form ("HSRF"). HSRFs are collected daily and those concerning dental issues are forwarded to the Division 6 dental clinic. At all times relevant here, Bessie Roddy, the dental assistant for the Division 6 dental clinic, was responsible for screening HSRFs and scheduling appointments for inmates. Inmates submitting an HSRF for a toothache are asked to rate their pain level on a 1-to-10 scale. The Cook County Jail's policy is to process as "urgent" HSRFs complaining of a toothache with a pain level of 5 or greater and schedule the inmate for a dental appointment within three days.

For most of 2018, Dr. Thomas Prozorovsky was the sole dentist working at the Division 6 dental clinic. He retired in December 2018 and his replacement was hired in April 2019 but lasted less than two months. In October 2019, Dr. Carolyn Winn-Adams began working full-time as Division 6's dentist. During the periods when the Division 6 dental clinic was without a full-time dentist, it was staffed by a rotation of four dentists and was only open two or three days a week.

While in Division 6, Clay submitted an HSRF complaining of significant pain from a toothache on November 6, 2018. After receiving no response, Clay submitted another HSRF on November 21, 2018. However, Clay was not evaluated by a dentist until December 3, 2018. Clay continued to experience pain from his toothache after that evaluation and on December 11, 2018, submitted another HSRF rating his pain at a 9 or 10 out of 10. He was not seen by a dentist until January 10, 2019.

According to Clay, the Division 6 dental clinic's scheduling and staffing policies violate the Eighth and Fourteenth Amendments because they result in unreasonably delayed dental care for inmates suffering from significant dental pain, thereby causing them gratuitous and prolonged pain. Indeed, seven other inmates filed their own lawsuits after experiencing similar delays in

receiving dental treatment while housed in Division 6.[1] Thus, Clay seeks to proceed with the present lawsuit on behalf of himself as well as the following proposed class:

> All persons assigned to Division 6 at Cook County Department of Corrections from February 19, 2018 to the date of entry of judgment, who submitted a written "Health Service Request Form" complaining of a toothache rated 6 or greater and did not receive an evaluation by a dentist for at least 14 days after submitting the request.

(Second Am. Compl. ¶ 24, Dkt. No. 55.) Now, Clay moves to certify this class.

## DISCUSSION

### I.     Class Certification

Federal Rule of Civil Procedure 23 governs class certification. To be certified, a proposed class must first satisfy the requirements of Rule 23(a), which allows certification only if:

> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a); *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012). If Rule 23(a) is satisfied, then the proposed class must also fall within one of the three alternatives set out in Rule 23(b). *Lacy v. Cook County*, 897 F.3d 847, 864 (7th Cir. 2018). In this case, Clay seeks certification under Rule 23(b)(3), which requires that "questions of law or fact common to class members predominate over any questions affecting only individual members,

---

[1] Those cases have been reassigned to this Court as related to the present action. *See Bailey v. Dart*, 19-cv-02414; *Hall v. Dart*, 19-cv-02995; *Robinson v. Dart*, 19-cv-03747; *Toby v. Dart*, 19-cv-04175; *Martinez v. Dart*, 19-cv-04348; *Dixon v. Dart*, 19-cv-06066; *Kuhlmann v. Dart*, 19-cv-06702.

and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

Plaintiff has the burden of showing by a preponderance of the evidence that Rule 23 has been satisfied. *Lacy*, 897 F.3d at 863. Moreover, Rule 23 is not "a mere pleading standard." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (internal quotation marks omitted). Rather, the plaintiff must "must affirmatively demonstrate his compliance with Rule 23" through evidentiary proof. *Id.* (internal quotation marks omitted). A district court must conduct a "rigorous analysis" before determining whether the plaintiff has satisfied each of Rule 23's requirements. *Id.* (internal quotation marks omitted). "Frequently that rigorous analysis will entail some overlap with the merits of the plaintiff's underlying claim [because] [t]he class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011).

## A. Ascertainability

Before turning to the Rule 23 analysis, the Court addresses the threshold issue of whether Clay has defined an ascertainable class. Implicit in Rule 23 is the requirement that the class "be defined clearly and based on objective criteria"—often referred to as the "ascertainability" requirement. *Mullins v. Direct Digit., LLC*, 795 F.3d 654, 659 (7th Cir. 2015). To be ascertainable, a class must not be defined too vaguely or by subjective criteria; the definition also may not create a "fail-safe class[]" such that the class is defined in terms of success on the merits. *Id.* at 659–60.

Defendants argue that the proposed class is not ascertainable because of the difficulty in identifying its members. Specifically, they contend that the only way to determine the members of the proposed class would be to engage in a time-intensive review of the medical records of each

detainee housed in Division 6 from February 19, 2018 (*i.e.*, the beginning of the class period) to the date of entry of judgment. Defendants' argument, however, ignores Seventh Circuit precedent, which holds that, to show ascertainability, a plaintiff is not required "to prove at the certification stage that there is a 'reliable and administratively feasible' way to identify all who fall within the class definition." *Id.* at 657–58. Imposing such a "stringent version of ascertainability . . . . conflicts with the well-settled presumption that courts should not refuse to certify a class merely on the basis of manageability concerns." *Id.* at 663. In short, the focus of the ascertainability requirement is "on the adequacy of the class definition itself" not on "whether, given an adequate class definition, it would be difficult to identify particular members of the class." *Id.* at 659. While matters of administrative convenience may properly be considered in the class certification analysis, they are better addressed in connection with the superiority requirement of Rule 23(b)(3). *Id.* at 663 ("[W]hen courts approach the issue as part of a careful application of Rule 23(b)(3)'s superiority standard, they must recognize both the costs ***and benefits*** of the class device."). Thus, the Court will reserve consideration of Defendants' arguments concerning the difficulty in identifying members of the proposed class until its superiority analysis.

Next, Defendants claim that the proposed class definition is too vague. "To avoid vagueness, class definitions generally need to identify a particular group, harmed during a particular time frame, in a particular location, in a particular way." *Id.* at 660. Clay's proposed class definition centers around a 14-day time frame meant to capture all inmates who experienced an unreasonable delay in receiving dental care for their toothaches. The time frame begins when the inmate submits an HSRF and ends when the inmate is evaluated by a dentist. However, Defendants argue that the terms "submitted" and "evaluation" are too vague. They claim that

"submitted" could refer to the date when the inmate places an HSRF in the collection box, which is not recorded. Further, the term "evaluation" could mean an initial evaluation or it could mean a follow-up appointment. In response, Clay defines the term "submitted" to mean the date on which the HSRF was collected, which can be determined by looking at the label at the bottom of the HSRF. And "evaluation" means whether a patient is seen by a dentist within 14 days of the HSRF's collection. The Court agrees that there is nothing vague about those terms or the class definition itself. Rather, the class definition sufficiently identifies a class of inmates who were not seen by a dentist within 14 days after Defendants collected the inmates' HSRFs complaining of significant pain from a toothache.

Finally, Defendants assert that because many inmates may misrepresent their subjective complaints of pain on their HSRFs, a class definition based on reported levels of pain is overbroad. Specifically, they argue that the class definition is not well-tailored to ensure that only those actually harmed by delayed dental care are included in the class. But Defendants do not deny that the class definition is based on objective criteria. Nor could they, because even though the class definition has a subjective component insofar as it depends on the inmates' rating of their pain, class membership is determined by objective criteria—namely the inmates' numerical rating of their pain on their HSRFs. Another court in this District considering a case challenging the same scheduling and staffing policies at a different Cook County Jail dental clinic found no objectivity issue with a substantially similar class definition because it was based on "descriptions of conduct" that identified "particular subsets of individuals based on data in medical records and thereby avoid[ed] problems of vagueness." *Whitney v. Khan*, 330 F.R.D. 172, 176 (N.D. Ill. 2019). This Court agrees with that analysis and finds it equally applicable to the proposed class definition here.

Defendants' main concern appears to be that the class definition would include inmates who did not actually experience significant dental pain and therefore were not harmed by Defendants' delay in scheduling them to see a dentist. That argument, however, is unavailing because "if a proposed class consists largely (or entirely, for that matter) of members who are ultimately shown to have suffered no harm, that may not mean that the class was improperly certified but only that the class failed to meet its burden of proof on the merits." *Messner*, 669 F.3d at 824. By contrast, where a class is defined "so broadly as to include a great number of members who for some reason ***could not*** have been harmed by the defendant's allegedly unlawful conduct, the class is defined too broadly to permit certification." *Id.* (emphasis added). Here, even if a large number of proposed class members exaggerated their pain, that does not mean they could not have been harmed by Defendants' delay in scheduling dentist appointments, only that they were not in fact harmed. That potential merits issue does not defeat Clay's showing that he has defined an ascertainable class. *Id.* at 823 ("[A]n argument that some class members' claims will fail on the merits if and when damages are decided [is] a fact generally irrelevant to the district court's decision on class certification.").

### B.    Rule 23(a)

Having found that Clay has defined an ascertainable class, the Court turns to the requirements of Rule 23(a). Initially, Defendants contended that Clay failed to meet the numerosity, commonality, and typicality requirements for class certification but made no argument as to the adequacy of representation requirement. After deposing Clay, Defendants came to believe that he would be an inadequate class representative. Therefore, they filed a motion for leave to supplement their response to the class certification motion to make that argument. (Dkt. No. 99.) The Court grants Defendants' motion. Likewise, the Court also grants

Clay's motion to file a response to Defendants' supplement (Dkt. No. 107), along with his separate motion for leave to supplement his motion for class certification (Dkt. No. 101). The Court will consider the parties' new arguments and evidence in its Rule 23(a) analysis.

i.       *Numerosity*

Rule 23(a)(1) requires that a proposed class be "so numerous that joinder of all members is impracticable." "A class can be certified without determination of its size, so long as it's reasonable to believe it large enough to make joinder impracticable and thus justify a class action suit." *Orr v. Shicker*, 953 F.3d 490, 497 (7th Cir. 2020) (internal quotation marks omitted). As the Seventh Circuit has explained, "[w]hile there is no magic number that applies to every case, a forty-member class is often regarded as sufficient to meet the numerosity requirement." *Id.* at 498 (internal quotation marks omitted).

According to Defendants, Clay can only speculate as to how many putative class members may exist and therefore fails to carry his burden of satisfying the numerosity requirement. Of course, there are already eight individual lawsuits, including the present action, challenging the same Division 6 dental clinic scheduling and staffing policies. And Clay has presented evidence indicating that there were often 30 HSRFs a day complaining of dental pain rated at 10/10. (Pl.'s Mem. in Supp. of Mot. for Class Certification, Ex. 9 at 63:4–19, Dkt. No. 62-9.) During the periods when the Division 6 dental clinic was staffed by a dentist, the dentist was required to treat between 12 to 15 patients per day. (Pl.'s Mem. in Supp. of Mot. for Class Certification, Ex. 10, Dkt. No. 62-10.) Yet Clay points to evidence showing that the clinic's dentists frequently fell short of that 12-to-15 patient minimum during the class period. (*Id.*) The Court is satisfied from the evidence that there will be at least 40 members of the proposed class and that joinder of those

8

members would be impracticable. Consequently, the Court finds that Clay has satisfied the numerosity requirement.

ii.    *Commonality*

Defendants next contend that Clay has failed to establish that Defendants' scheduling and staffing policies involve a question common to all members of the proposed class. For purposes of Rule 23(a)(2)'s requirement that there be questions of law or fact common to the class, "even a single common question will do." *Wal-Mart*, 564 U.S. at 359 (internal quotation marks and alterations omitted). However, "superficial common questions—like whether . . . each class member 'suffered a violation of the same provision of law'—are not enough." *Jamie S. v. Milwaukee Pub. Schs.*, 668 F.3d 481, 497 (7th Cir. 2012) (quoting *Wal-Mart*, 564 U.S. at 350). Rather, commonality requires the plaintiff to "assert a common injury that is 'capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *Lacy*, 897 F.3d at 865 (quoting *Wal-Mart*, 564 U.S. at 350). Put differently, "the key to commonality is 'not the raising of common questions but, rather, the capacity of a class-wide proceeding to generate common **answers** apt to drive the resolution of the litigation.'" *Id.* (quoting *Wal-Mart*, 564 U.S. at 350). "The critical point is the need for **conduct** common to members of the class." *Phillips v. Sheriff of Cook Cnty.*, 828 F.3d 541, 553 (7th Cir. 2016) (internal quotation marks omitted).

Here, Clay contends that all members of the proposed class shared a common injury caused by Defendants' deliberate indifference to their objectively serious medical needs. Those injuries arose from the Division 6 dental clinic's scheduling and staffing policies, which allegedly caused all members of the proposed class to experience an unreasonable delay in receiving an evaluation from a dentist. "At the class certification stage, courts must broach the merits of a case

if necessary to determine whether the proposed class shares common questions of law or fact." *Whitney*, 330 F.R.D. at 176. The Seventh Circuit has "identified two distinct categories of deliberate indifference claims pertaining to medical treatment." *Phillips*, 828 F.3d at 554 (internal quotation marks omitted). "First, there are claims of isolated instances of indifference to a particular inmate's medical needs." *Id.* (internal quotation marks omitted). Such claims require a plaintiff to show that "he suffered from an objectively serious medical condition and that the defendant was deliberately indifferent to that condition." *Id.* "Second, there are claims that systemic deficiencies at the prison's health care facility rendered the medical treatment constitutionally inadequate for all inmates." *Id.* (internal quotation marks omitted). To prove these claims, a plaintiff "must demonstrate that there are such systemic and gross deficiencies in staffing, facilities, equipment, or procedures that the inmate population is effectively denied access to adequate medical care." *Id.* (internal quotation marks omitted).

There is no question that Clay's deliberate indifference claim falls into the second category, as it involves allegedly systemic deficiencies at the Division 6 dental clinic. Specifically, Clay contends that Defendants' common policies of delegating to the Division 6 dental assistant the task of scheduling inmates for dental appointments and failing to staff the Division 6 dental clinic with more than one full-time dentist effectively deny Division 6 inmates access to constitutionally adequate medical care. The Seventh Circuit has recognized that where a plaintiff "can present classwide evidence that a prison is engaging in a policy or practice which rises to the level of systemic indifference, then [a district court] can identify conduct common to members of the class which advances the litigation." *Id.* at 557 (internal quotation marks omitted). Accordingly, "a class action probably could be brought where evidence suggested that a prison

had such a consistent pattern of egregious delays in medical treatment that a trier of fact might

infer a systemic unconstitutional practice." *Id.*

At all times relevant here, a dental assistant was in charge of scheduling inmates for

appointments with a dentist, and there was never more than one full-time dentist available to see

patients at the Division 6 dental clinic. Clay has adduced ample evidence suggesting that both

those policies were deficient and caused substantial delays in dental evaluations for inmates

complaining of toothaches. For example, the Cook County Jail's chief dentist testified that dental

assistants should not be tasked with screening and prioritizing HSRFs for treatment because it

"requires more in-depth knowledge" that she did not believe dental assistants possessed. (Pl.'s

Reply in Supp. of Mot. for Class Certification, Ex. 1 at 100:21–101:20, Dkt. No. 75-1.) Moreover,

the evidence shows that even when there was a full-time dentist at the clinic, that dentist, Dr.

Prozorovsky, failed to meet the minimum goal of patient visits for most of 2018. (Pl.'s Mem. in

Supp. of Mot. for Class Certification, Ex. 10.) Indeed, Dr. Prozorovsky emailed his supervisor

complaining about failures in timely scheduling evaluations for Division 6 inmates whose HSRFs

regarding dental pain had been labeled urgent. (Pl.'s Mem. in Supp. of Mot. for Class

Certification, Ex. 13, Dkt. No. 62-13.) And the dental assistant, Roddy, testified that when there

was not a full-time dentist assigned to the clinic, there were only three days a week available to

schedule patients for dental treatment, which resulted in Division 6 inmates having even less

access to a dentist. (Pl.'s Mem. in Supp. of Mot. for Class Certification, Ex. 5 at 97:3–100:4, Dkt.

No. 62-5.) That the Division 6 dental clinic scheduling and staffing policies actually caused

patients complaining of toothaches rated 6 or greater to experience delays in dental care is borne

out by evidence showing that such patients frequently waited at least 14 days to see a dentist.

(Pl.'s Suppl. in Supp. of Mot. for Class Certification, Ex. 2, Dkt. No. 101-2.)

In short, the Court finds that Clay has made a sufficient showing that Defendants' common scheduling and staffing policies at the Division 6 dental clinic bind the proposed class members together. *See Jamie S.*, 668 F.3d at 498 ("[A]n illegal policy might provide the 'glue' necessary to litigate otherwise highly individualized claims as a class." (quoting *Wal-Mart*, 564 U.S. at 352)). The class members' claims arise from the same alleged course of conduct by Defendants, represented by those two policies. Whether those policies result in a systemic denial of constitutionally adequate medical care to Division 6 inmates is an issue common to the entire class that is capable of classwide resolution. Because the policies give rise "to the same kind of claims from all class members, there is a common question." *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 756 (7th Cir. 2014).

### iii.        *Typicality*

A plaintiff's claim will satisfy Rule 23(a)(3)'s typicality requirement where it "arises from the same event or practice or course of conduct that gives rise to the claims of other class members and is based on the same legal theory." *Lacy*, 897 F.3d at 866 (internal quotation marks and alteration omitted). "This requirement is meant to ensure that the named representative's claims have the same essential characteristics as the claims of the class at large." *Id.* (internal quotation marks omitted). The typicality and commonality inquiries are "closely related," *Keele v. Wexler*, 149 F.3d 589, 595 (7th Cir. 1998), and "tend to merge," *Wal-Mart*, 564 U.S. at 349 n.5. Clay satisfies the typicality requirement as both his and the class's claims arise from the same Division 6 dental clinic scheduling and staffing policies and are based on the same deliberate indifference theory. As discussed above, those policies resulted in inmates complaining of dental pain waiting 14 days or more to receive dental treatment. *See Lacy*, 897 F.3d at 866 ("Here, the

named plaintiffs alleged the same injurious conduct and requested the same modifications as the class at-large. We see no reason to question the typicality of their claims.").

### iv.     Adequacy of Representation

In determining whether a plaintiff satisfies Rule 23(a)(4)'s requirement that the class representative fairly and adequately protect the interests of the class, the Court must consider whether the named plaintiff: "(1) has antagonist or conflicting claims with other members of the class; (2) has a sufficient interest in the outcome of the case to ensure vigorous advocacy; and (3) has counsel that is competent, qualified, experienced and able to vigorously conduct the litigation." *Quiroz v. Revenue Prod. Mgmt., Inc.*, 252 F.R.D. 438, 442 (N.D. Ill. 2008) (internal quotation marks omitted). Defendants do not challenge the adequacy of Clay's counsel and Clay has shown that both his attorneys, Thomas Gerard Morrisey and Patrick William Morrisey, have ample experience serving as class counsel in civil rights cases. (Pl.'s Mem. in Supp. of Mot. for Class Certification at 12 nn. 4–5, Dkt. No. 62.) Thus, the Court concludes that Clay's attorneys are qualified to serve as class counsel here. Nonetheless, Defendants contend that Clay is an inadequate class representative because during his deposition, he purportedly demonstrated a lack of basic knowledge about the claims brought in this action.

Under Rule 23(a)(4), an adequate class representative "must maintain only an understanding of the basic facts underlying the claims, some general knowledge, and a willingness and ability to participate in discovery." *Quiroz*, 252 F.R.D. at 442 (internal quotation marks omitted). "The burden of establishing that the class representative meets this standard is not difficult. *Id.* (internal quotation marks omitted). Moreover, "[i]t is well established that a named plaintiff's lack of knowledge and understanding of the case is insufficient to deny class

13

certification unless his ignorance unduly impacts his ability to vigorously prosecute the action."
*Murray v. New Cingular Wireless Servs., Inc.*, 232 F.R.D. 295, 300 (N.D. Ill. 2005).

Defendants' contention that Clay lacks the requisite knowledge of the case is baseless. Specifically, Defendants argue that Clay's deposition testimony reveals him to be a figurehead who has ceded all control over the case to his attorneys. For example, Defendants claim that Clay's testimony shows that he only read the original complaint in the case the day after it was filed and then only scanned it. However, the actual testimony indicates otherwise. When first asked, Clay confirmed that he did read the complaint before it was filed. (Def.'s Mot. to Suppl. Resp., Ex. 1 at 13:1–6, Dkt. No. 99-1.) Only after persistent questioning from Defendant's counsel—which yielded objections from Clay's counsel—did Clay express some confusion on the issue. (*Id.* at 16:19–25:24.) But his deposition testimony as a whole reveals that Clay was at least familiar with the allegations in the complaint before it was filed. And a class representative is not required to conduct a detailed review of every filing before it is submitted, particularly where, as here, he is detained. *See T.S. v. Twentieth Century Fox Television*, No. 16 C 8303, 2021 WL 2376017, at *32–33 (N.D. Ill. June 10, 2021) (rejecting claim that a pretrial detainee was an inadequate class representative even though he had not seen a proposed amended complaint before it was filed and was unfamiliar with interrogatory responses filed by his counsel).

Defendants also fault Clay for gaps in his knowledge of the case's procedural history. For example, Clay indicated he was unaware when the First Amended Complaint was filed or that a Second Amended Complaint was filed thereafter. But it is not necessary for a class representative to have detailed knowledge of every action his counsel takes in the litigation. *See Murray*, 232 F.R.D. at 300 (finding that a class representative was adequate despite not being "aware that his attorneys had filed certain motions" because "[u]nderstanding the minutia of a case is not a

prerequisite to being a class representative"). Rather, the Seventh Circuit has recognized that "[e]xperience teaches that it is counsel for the class representative and not the named parties, who direct and manage these actions." *Culver v. City of Milwaukee*, 277 F.3d 908, 913 (7th Cir. 2002).

Finally, Defendants claim that Clay's testimony evidences a lack of understanding of the facts of the case. The Court disagrees. Clay's testimony reveals that he understands that the case is about Cook County Jail detainees who, like him, complained of dental pain but were not promptly scheduled for an appointment with a dentist, thereby prolonging their pain. (Def.'s Mot. to Suppl. Resp., Ex. 1 at 49:20–50:1; 57:17–58:24; 145:4–152:1.) Further, Clay testified that he was in regular communication with his counsel about the case. (*Id.* at 66:13–69:22.) Clay's testimony certainly does not reveal a level of ignorance about the case that would unduly impact his ability to prosecute the action. Defendants highlight portions of Clay's deposition where he had to reference the complaint to determine who the defendants are in this action. But Clay clearly understood that his claim was based on his inability to receive appropriate dental care at the Cook County Jail. Apparently, Defendants are demanding that Clay know they are being sued because they are the proper defendants for a deliberate-indifference claim based on the Cook County Jail's policy or practice pursuant to *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978). An adequate class representative need not have such knowledge of "the larger legal theories upon which [his] case is based." *Quiroz*, 252 F.R.D. at 443 (internal quotation marks omitted).

Despite Defendants' assertions to the contrary, the Court does not believe that Clay's deposition testimony fails to show that he lacks sufficient knowledge of the case to serve as the class representative. Importantly, Defendants have not shown that Clay has been unwilling to participate in discovery or comply with any of his obligations as class representative. And

Defendants do not assert any other basis to challenge Clay's showing on the adequacy of representation requirement. Thus, the Court concludes that Clay will fairly and adequately protect the interests of the class.

### C. Rule 23(b)(3)

The Court next turns to whether Clay has satisfied Rule 23(b)(3)'s predominance and superiority requirements. Under Rule 23(b)(3), relevant considerations include the class members' interests in individual control of their claims, whether the existence of other lawsuits weighs against certifying the class, the desirability of the forum, and the difficulties in managing the class action. The decision to certify a Rule 23(b)(3) class "is one that depends on a careful assessment of the facts, of potential differences among class members, and of the overall importance of the common issues of law or fact to the ultimate outcome." *Riffey v. Rauner*, 910 F.3d 314, 318 (7th Cir. 2018).

#### i. Predominance

While similar to Rule 23(a)'s typicality and commonality requirements, Rule 23(b)(3)'s "predominance criterion is far more demanding." *Messner*, 669 F.3d at 814 (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 624 (1997)). The predominance "'inquiry trains on the legal or factual questions that qualify each class member's case as a genuine controversy,' with the purpose being to determine whether a proposed class is 'sufficiently cohesive to warrant adjudication by representation.'" *Id.* (quoting *Amchem*, 521 U.S. at 623). The requirement will be satisfied "when common questions represent a significant aspect of a case and can be resolved for all members of a class in a single adjudication." *Id.* at 815 (internal quotation marks and alterations omitted). Put differently, "common questions can predominate if a common nucleus of

operative facts and issues underlies the claims brought by the proposed class." *Id.* (internal quotation marks omitted).

"Analysis of predominance under Rule 23(b)(3) 'begins, of course, with the elements of the underlying cause of action.'" *Id.* (quoting *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011)). Here, Clay asserts a *Monell* claim alleging policies resulting in delayed dental care at the Division 6 dental clinic. As discussed above, Clay's claim requires him to prove that there are systemic and gross deficiencies at the clinic that have resulted in the denial of constitutionally adequate care for all Division 6 inmates. *Phillips*, 828 F.3d at 554. To prove his claim, the evidence must show that Defendants' "failure to establish adequate systems for scheduling health care . . . and addressing inmate grievances about health care . . . was so pervasive that acquiescence on the part of policymakers was apparent and amounted to a policy decision." *Daniel v. Cook County*, 833 F.3d 728, 734 (7th Cir. 2016) (internal quotation marks omitted). "[A]n inmate can meet this burden by offering competent evidence tending to show a general pattern of repeated behavior (*i.e.*, something greater than a mere isolated event)." *Id.* (internal quotation marks omitted).

Clay has pointed to two common policies that he contends result in systemic delays in dental treatment for all Division 6 inmates. The evidence as to those policies is common to all class members. *See Messner*, 669 F.3d at 815 ("If the same evidence will suffice for each member to make a prima facie showing, then it becomes a common question." (internal quotation marks omitted)); *see also Whitney*, 330 F.R.D. at 179 ("[The plaintiff's] evidence that the defendants' policies produced systemic delays in treatment make these issues amenable to class-wide resolution."); *Smentek v. Sheriff of Cook Cnty.*, No. 09 C 529, 2014 WL 7330792, at *10 (N.D. Ill. Dec. 22, 2014) ("[C]ourts routinely certify classes under Rule 23(b)(3) challenging . . . . a uniform

policy or practice constituting deliberate indifference . . . ." (internal quotation marks omitted)). And a determination as to whether those policies are unconstitutional is a significant aspect of this case that can be resolved for all class members in a single adjudication. *See, e.g.*, *Parish v. Sheriff of Cook Cnty.*, No. 07 C 4369, 2016 WL 1270400, at *9 (N.D. Ill. Mar. 31, 2016) ("[W]hether [the Cook County Jail's] policy exists and is constitutional will be the primary focus of this litigation."); *Otero v. Dart*, 306 F.R.D. 197, 207 (N.D. Ill. 2014) ("Plaintiff challenges what he alleges is a policy and practice that applies to all Cook County Jail detainees [and the] predominant issue in this litigation will be the existence and constitutionality of that alleged practice.").

In response, Defendants contend that Clay's *Monell* claim also requires him to prove that the policy resulted in an objectively unreasonable delay in treatment and that inquiry depends on each class member's individual circumstances. The Seventh Circuit has recognized that "the length of delay that is tolerable depends on the seriousness of the condition and the ease of providing treatment." *Phillips*, 828 F.3d at 555 (internal quotation marks omitted). But, as discussed above, the Seventh Circuit also noted that a class action could likely be maintained based on "a policy that regularly and systemically impeded timely examinations." *Id.* at 557. That is what is at issue here, as Clay seeks to represent a class consisting of Division 6 inmates who waited 14 days or more for a dental evaluation despite complaining of toothaches rated at a pain level that the Cook County Jail regarded as urgent and needing care within three days. The gravamen of the claim is that a 14-day delay is objectively unreasonable for any inmate complaining of such pain regardless of their varying individual circumstances.

Further, the proposed class is precisely defined so as to limit the salience of individual variances between its members. Specifically, the class focuses only on the subset of Division 6

inmates whose pain level and delay in treatment were so substantial that there is a realistic possibility that the entire class could be found to have experienced an objectively unreasonable delay in treatment, regardless of their individual differences. *Cf. Pella Corp. v. Saltzman*, 606 F.3d 391, 394 (7th Cir. 2010) ("The narrow way in which the district court defined the classes here eliminates concern that the definitions are overbroad or include a great many people who have suffered no injury."). Given the nature of the claim and the class definition, the Court finds that the individual questions do not overwhelm the common ones. *See Messner*, 669 F.3d at 815 ("Individual questions need not be absent. The text of Rule 23(b)(3) itself contemplates that such individual questions will be present. The rule requires only that those questions not predominate over the common questions affecting the class as a whole.").

Of course, any member of the class must also have suffered from an objectively serious medical condition. *Whitney*, 330 F.R.D. at 179 (citing *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016)). Defendants claim that basing the class, in part, on the members' own subjective rating of their pain does not adequately establish that each member suffered from an objectively serious dental condition. *See id.* ("Courts have generally found that dental pain is sufficiently serious only when it is accompanied by other harm, such as recession of the gums, tooth decay, or difficulty eating."); *see also Board v. Farnham*, 394 F.3d 469, 480 (7th Cir. 2005) ("[D]ental pain accompanied by various degrees of attenuated medical harm may constitute an objectively serious medical need."). Thus here, as in *Whitney*, "each putative class member would need to prove that he or she suffered from a sufficiently serious condition in order to establish [a constitutional] violation." *Whitney*, 330 F.R.D. at 179. But "the need for individual proof alone does not necessarily preclude class certification." *Pella*, 606 F.3d at 394. Indeed, Rule 23(b)(3) does not require "that each element of [a] claim is susceptible to classwide proof." *Amgen Inc. v. Conn.*

19

*Ret. Plans & Tr. Funds*, 568 U.S. 455, 469 (2013) (internal quotation marks omitted). In *Whitney*, the district court found that a proposed class substantially similar to that here satisfied the predominance requirement "notwithstanding the need for individualized proof of objective seriousness." *Whitney*, 330 F.R.D. at 180. Similarly, this Court finds that the predominance element is satisfied because "the predominant issues in the litigation, at least with regard to liability, will be the existence and constitutionality of [Defendants'] alleged policies." *Parish*, 2016 WL 1270400, at *8 (internal quotation marks omitted).

The Court further notes that determining whether an inmate's toothache pain is objectively serious such that he is eligible for inclusion in the class does not appear to entail a particularly rigorous inquiry. *See Beaton v. SpeedyPC Software*, 907 F.3d 1018, 1029 (7th Cir. 2018) (citing the availability of "streamlined mechanisms" to handle individualized inquiries as a factor in the predominance analysis). Indeed, Clay's evidence includes a chart comparing several inmates' HSRFs with the dentist's eventual (delayed) diagnosis. It is relatively easy to discern from the chart that numerous inmates' toothaches were objectively serious, as the diagnoses note accompanying tooth decay or infection. (Pl.'s Suppl. in Supp. of Mot. for Class Certification, Ex. 2.) Similarly, looking to the inmates' diagnoses should provide an efficient means of eliminating from the class those inmates whose complaints of serious toothache pain were not genuine. Thus, this Court agrees with the *Whitney* court that the need for individualized proof on the objective seriousness of a class member's toothache does not predominate over the common questions regarding the Division 6 dental clinic's scheduling and staffing policies. *See Whitney*, 330 F.R.D. at 180.

ii.      *Superiority*

Finally, the Court must determine whether a class action is the superior way to resolve

Clay's lawsuit. "The superiority inquiry requires courts to assess the fairness and efficiency of

class adjudication 'with an eye toward other available methods.'" *Quinn v. Specialized Loan*

*Servicing, LLC*, 331 F.R.D. 126, 133 (N.D. Ill. 2019) (quoting *Mullins*, 795 F.3d at 664).

Superiority will be found "when a class action would achieve economies of time, effort, and

expense, and promote uniformity of decision as to persons similarly situated, without sacrificing

procedural fairness or bringing about other undesirable results." *Wilkins v. Just Energy Grp., Inc.*,

308 F.R.D. 170, 190 (N.D. Ill. 2015) (internal quotation marks and alteration omitted).

To begin, the Court addresses Defendants' arguments concerning the administrative

inconvenience they would face in identifying class members. Specifically, Defendants contend

that the determination will require them to spend significant time combing through thousands of

medical records to identify each detainee who fits the class definition. But Clay has identified two

alternative and more administratively convenient methods of identifying class members. First,

class members can be identified by consulting an electronic spreadsheet maintained by

Defendants that shows the time a Division 6 inmate who submitted an HSRF processed as urgent

had to wait to be evaluated by a dentist. Second, Defendants require HSRFs seeking dental care to

be sent by email to the Division 6 dental clinic. A review of those emails would establish when

the forms were received and the date of receipt can be compared to the date of the inmate's

evaluation. Defendants do not deny that both categories of documents exist, as they are both the

subject of Clay's motion to compel. As to the emails, Defendants argued that when they were

ordered to produce a similar category of documents in *Whitney*, they spent about 30 hours sorting

through the emails to find responsive HSRFs. While the Court does not deny that process entailed

some burden, the Court does not find the burden to be unreasonable for a class action. Thus, the Court is not persuaded that the administrative inconvenience of identifying members of the class precludes certification. In any case, whatever difficulties Defendants may face in identifying members of the class are outweighed by the burden members of the class would face if each was required to separately litigate their claims.

Defendants also assert that a class action would not be efficient because individual trials will be required as to the objective reasonableness of the delay each class member faced. That argument is unavailing for the reasons discussed above. By contrast, there are already several lawsuits challenging the same Division 6 dental clinic scheduling and staffing policies and the proposed class may include many more members who may not be inclined to separately pursue their claims. *See Flood v. Dominguez*, 270 F.R.D. 413, 422 (N.D. Ind. 2010) ("[C]lass certification is more efficient than multiple individual suits at dealing with these common questions. Indeed, requiring each class member to bring individual actions would waste time and money."). Because the common issues regarding the policies can be resolved in a single proceeding, the Court finds that a class action is the superior method of adjudication. *Whitney*, 330 F.R.D. at 180; *Parish*, 2016 WL 1270400, at *9 ("Judicial economy is best served by a single class action challenging the constitutionality of [the Cook County Jail's] purported policies rather than a multiplicity of individual lawsuits premised upon essentially the same issues."); *see also Otero*, 306 F.R.D. at 207 ("A class action is the superior procedure for litigating these claims [involving a policy and practice applicable to all Cook County Jail detainees] because the Court can determine the legality of the alleged practice and procedure in one proceeding.").

## II.      Motion to Compel

The Court now turns to Clay's motion to compel. As discussed above, Clay's motion to compel concerns: (1) the HSRFs and corresponding e-mails for Division 6 inmates seeking dental care during the class period; and (2) an electronic spreadsheet showing wait times for HSRFs processed as urgent during the class period. Defendants have resisted producing those documents, arguing that the requests are unduly burdensome, overbroad, and not proportional to the needs of the case. Of course, Defendants made those arguments prior to this case being certified as a class action. In light of class certification, the Court finds the documents unquestionably relevant and necessary to ascertaining members of the class. Moreover, given the newly expanded scope of the case (from putative to certified class action), the Court finds Defendants' arguments concerning burden and overbreadth to be unavailing. Consequently, Clay's motion to compel is granted.

### CONCLUSION

For the foregoing reasons, Clay's motions to certify class (Dkt. No. 60) and to compel Cook County to produce documents (Dkt. No. 71) are both granted. The Court certifies the following class under Federal Rule of Civil Procedure 23(b)(3): All persons assigned to Division 6 at Cook County Department of Corrections from February 19, 2018 to the date of entry of judgment, who submitted a written "Health Service Request Form" complaining of a toothache rated 6 or greater and did not receive an evaluation by a dentist for at least 14 days after submitting the request. The Court appoints Patrick William Morrissey and Thomas Gerard Morrissey as class counsel.

ENTERED:

Dated:  September 20, 2021

_____
Andrea R. Wood
United States District Judge