## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| WILLIE CLAY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 19 CV 2412 |
| v. ) | |
| ) | Judge Andrea R. Wood |
| THOMAS DART, Sheriff of Cook County, ) | |
| and COOK COUNTY, ILLINOIS, ) | Magistrate Judge Jeffrey I. Cummings |
| ) | |
| Defendants. ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the Court are dueling motions for sanctions filed by plaintiff Willie Clay, (Dckt. #259), and defendant Cook County, (Dckt. #265), surrounding the Rule 30(b)(6) deposition of Dr. Jorelle Alexander. For the reasons set forth below, both motions for sanctions are denied.

## I.      BACKGROUND[1]

Plaintiff Willie Clay, a former inmate of Division 6 at Cook County Jail, brings this class action against defendants Sheriff Thomas Dart and Cook County alleging he was denied urgent dental care in violation of his constitutional rights. According to the allegations of the Second Amended Complaint, the Division 6 dental clinic suffered from "gross deficiencies in staffing" and "systemic deficiencies with the scheduling of inmates." (Dckt. #55 at 4). Specifically, Clay alleges that after submitting a Health Service Request Form ("HSRF") on November 6, 2018 complaining of a toothache with a pain level of "8," and another HSRF on November 21, 2018, he waited until December 3, 2018 to be scheduled and transported to the Division 6 dental clinic for evaluation. (*Id*. at 2). Clay alleges that he continued to experience delays in treatment after his initial evaluation. (*Id*. at 3).

---

[1] The Court presumes familiarity with the facts of this case and includes only those facts relevant to the motions before the Court.

On December 23, 2022, the Court granted the parties' agreed motion, (Dckt. #244), to take the deposition of Dr. Jorelle Alexander, the Chair of the Department of Oral Health for Cook County Health. Pursuant to that motion, the parties agreed that Dr. Alexander would serve as the County's Rule 30(b)(6) designee to "discuss the timing between collection of the health service request forms, the scheduling of appointments and the dental evaluations for plaintiffs and various exemplars." (*Id.* at 1). Moreover, the parties were of the understanding that "the testimony regarding the timing between collection of the health service request form and the dental evaluation will be consistent with Dr. Alexander's testimony" in the related matter of *Martinez v. Dart*, 19-cv-4348.[2] (*Id.* at 2). Accordingly, although the parties agreed that Dr. Alexander would sit for a maximum of ten hours of testimony, plaintiff's counsel was "hopeful" that the deposition would be completed more quickly. (*Id.*)

After the Court granted the motion, plaintiff issued his Rule 30(b)(6) notice to Dr. Alexander, identifying 41 inmates about which plaintiff intended to elicit testimony regarding the following representative topic:

> After collection of Derrick Silket's HSRF on August 11, 2018 complaining of a toothache with a pain level "8" circled, explain why he waited until September 7, 2018 to be evaluated by a dentist.[3]

(*See* Dckt. #259-1). Following service of this notice, counsel for the parties exchanged e-mails to discuss how to best streamline Dr. Alexander's deposition. For example, on January 6, 2023, plaintiff's counsel e-mailed defense counsel asking:

- Has Dr. Alexander had sufficient time to investigate the Rule 30(b)(6) notice sent 12/23?

---

[2] As explained in detail in defendant's motion, (Dckt. #265 at 7-11), Dr. Alexander also served as the Rule 30(b)(6) designee in *Martinez* and sat for 5.5 hours of deposition testimony in that matter on November 10, 2022.

[3] The inclusion of this topic was in line with this Court's prior ruling in *Martinez* regarding plaintiff's Rule 30(b)(6) notice in that case. (*See* 19-cv-4348 at Dckt. #75).

- How should we coordinate the testimony . . . so that it runs smoothly and efficiently. For example, will Dr. Alexander have possession of necessary documents for her to answer the topics?

- Will the answers to each topic be essentially the same? If so, is there a procedure for us to stipulate to the testimony so we can efficiently use the deposition time?

(Dckt. #259-2 at 2). Defense counsel responded:

> We are confirmed for Dr. Alexander's deposition tomorrow. Yes, she will be prepared to answer questions on the Rule 30(b)(6) notice sent 12/23. If you want to show her any documents, please mark them as an exhibit. If you want to know if her answer will be the same for all the topics, you may ask her that during the deposition tomorrow.

(*Id*. at 1).

Dr. Alexander eventually sat for her deposition on January 10 and 12, 2023. As explained in more detail below, both parties now seek sanctions pursuant to Rule 30(d)(2) as a result of that deposition and counsel's communications that followed.

## II.    LEGAL STANDARD

When presented with a deposition notice under Federal Rule of Civil Procedure 30(b)(6), a "named organization must . . . designate one or more . . . persons who consent to testify on its behalf." Fed.R.Civ.P. 30(b)(6). These depositions are substantially different from individual depositions because the witness must be prepared to testify not only regarding matters within his or her own personal knowledge, but as to matters within the knowledge of the entity as a whole. *DSM Desotech Inc. v. 3D Systems Corp.*, No. 08 C 1531, 2011 WL 117048, at *1 (N.D.Ill. Jan. 12, 2011). Accordingly, entities have a duty to "make a conscientious good-faith endeavor to designate the persons having knowledge of the matters sought by [the discovering party] and to prepare those persons in order that they can answer fully, completely, unevasively, the questions posed by [the discovering party] as to the relevant subject matters." *Buycks-Roberson v.*

*Citibank Fed. Sav. Bank*, 162 F.R.D. 338, 342 (N.D.Ill. 1995), *quoting Fed. Deposit Ins. Corp. v. Butcher*, 116 F.R.D. 196, 199 (E.D.Tenn. 1986). Rule 30(b)(6) witnesses need not be perfect, so long as they are "educated and gain the requested knowledge to the extent that it is reasonably available to the entity." *Consumer Fin. Prot. Bureau v. Borders & Borders*, *PLC*, No. 3:13-cv-1047-CRS, 2016 WL 9460471, at *3 (W.D.Ky. June 29, 2016).

Further, "Rule 30(d)(2) authorizes courts to impose appropriate sanctions on any person who impedes, delays, or frustrates the fair examination of the deponent." *Sec. Nat. Bank of Sioux City, IA v. Jones Day*, 800 F.3d 936, 942 (8th Cir. 2015) (internal quotation marks omitted); *Jokich v. Rush Univ. Med. Ctr.*, No. 18 C 7885, 2020 WL 2098060, at *3 (N.D.Ill. May 1, 2020); *Medline Indus. v. Lizzo*, No. 08 C 5867, 2009 WL 3242299, at *4 (N.D.Ill. Oct. 6, 2009). "This rule is meant to authorize courts to 'impose the costs resulting from obstructive tactics that unreasonably prolong a deposition on the person engaged in such obstruction.'" *United States v. All Assets Held at Bank Julius Beer & Co., Ltd.*, No. CV 04-798 (PLF/GMH), 2017 WL 4183450, at *5 (D.D.C. Sept. 20, 2017), *quoting* Fed.R.Civ.P. 30(d)(2) advisory committee notes.

## III.     ANALYSIS

### A.     Dr. Alexander was properly prepared to testify as Cook County's designee regarding the topics set forth in plaintiff's Rule 30(b)(6) notice and sanctions are not warranted.

Citing to a few small portions of Dr. Alexander's ten-hour deposition testimony, plaintiff contends that Dr. Alexander was unprepared to testify as Cook County's Rule 30(b)(6) designee on the topics set forth in the notice. Specifically, plaintiff argues that Dr. Alexander was unprepared because: (1) after receiving the Rule 30(b)(6) notice on December 23, 2022, she did not speak to anyone and could not recall what medical records she reviewed in advance of the

deposition; (2) she "insisted" that plaintiff's counsel show her documents to testify as the designee; and (3) she could not testify as to the reasons each of the 41 inmates were delayed treatment after submitting HSRF forms reflecting urgent dental needs.[4]

Based on this conduct, plaintiff requests a sanction directing defendant to enter into the following stipulation:

> For the topics where Cook County does not have any explanation for the delay in treatment of specific exemplars, Cook County stipulate[s] that after making a good faith and thorough review of all available information, defendant does not have an explanation for the delays.

(Dckt. #259 at 7). For the topics where Cook County *has* an explanation for the delay in treatment, plaintiff asks the Court to order Cook County to produce another designee to testify regarding those topics, at defendant's cost. Plaintiff also seeks fees and costs incurred in filing the motion for sanctions. For the following reasons, the Court declines plaintiff's request for sanctions.

First, the Court quickly disposes of any contention that Dr. Alexander was not prepared simply because she did not speak to any staff members or recall which medical records she reviewed *after* receiving the Rule 30(b)(6) notice on December 23, 2022. As defendant

---

[4] Plaintiff also takes issue with one of defense objections during Dr. Alexander's deposition. (*See* Dckt. #259 at 6 (citing Alexander Dep. at 74:20-75:3) ("Dr. Alexander, don't answer that question. That's protected work product privilege. So our litigation strategy, future occurrences is privileged.")). But the Court has reviewed that objection and finds no sanctionable conduct where defense counsel instructed his client not to answer to preserve the work product privilege. *See Medline Indus., Inc. v. Wypetech, LLC*, No. 20 CV 4424, 2020 WL 6343089, at *2 (N.D.Ill. Oct. 29, 2020) ("The limited circumstances under which an attorney may instruct a witness not to answer a question during a deposition are specified by Rule 30(c)(2), which provides that "[a] person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3).") (citing *Redwood v. Dodson*, 476 F.3d 462, 468 (7th Cir. 2007)). Notably, defense counsel's conduct here is easily distinguishable from counsel in *Medline* who "repeatedly instructed Medline's corporate witnesses not to answer questions on the ground that the questions were beyond the scope of Wypetech's Rule 30(b)(6) deposition notice." 2020 WL 6343089, at *2. While defense counsel here *objected* on such grounds for the record, he did not repeatedly instruct Dr. Alexander not to answer questions he believed were outside the scope of the notice.

summarizes in detail in its response brief, (Dckt. #265 at 4-7, 19-20), Dr. Alexander has been intimately involved in the discovery process in this case, and others, including assisting in preparing and verifying responses to interrogatories regarding the same topics and exemplar inmates as addressed at her deposition. Indeed, as Dr. Alexander herself explained, "[o]f these 41 cases, at some point in time, [medical and scheduling records] [have] all been reviewed because these names were presented before." (Dckt. #265-34 at 10). Thus, it is of no moment that Dr. Alexander did not *re-review* the thousands of pages of medical and scheduling records for the 41 exemplars between December 23, 2022 and her deposition just a few short weeks later. Similarly, the Court would not expect that Dr. Alexander would speak to the nurses or dental staff about each of the 41 exemplars in advance of her deposition given that they have seen "thousands of patients" over the relevant time frame and when she *has* asked staff about a patient "four years, three years, two years, one year later . . . they do not recall . . . the intricacies of the patients and why they made the decision to schedule after the fact." (Dckt. #265-34 at 38).

Second, the Court does not agree that Dr. Alexander "insisted that plaintiff's counsel show her documents to testify as the designee." (Dckt. #259 at 3). Rather, a review of Dr. Alexander's testimony reveals that she explained *ad nauseum* to plaintiff's counsel that she had not memorized the thousands of pages of scheduling and medical records of the 41 exemplars, but that if he presented her with the relevant records, she would attempt to answer any questions. (*See, e.g.,* Dckt. #265-33 at 57 ("There are hundreds of pages of records for each of these patients. I am more than happy to answer, but you're going to have to pull up their medical records and put them on the screen. I do not have their medical records memorized"); Dckt. #265-34 at 13 ("If you're going to ask me a question about any of the 41 patients here and the

medical record, when they put in a Health Service Request Form, what nurse saw them, when

they saw them, what was documented, you're going to have to show it to me")).

Contrary to plaintiff's assertion, this conduct does not warrant sanctions. As this Court

recently explained:

> Rule 30(b)(6) depositions are "not designed to be a memory contest," *Seaga Mfg.,
> Inc. v. Intermatic Mfg. Ltd.*, No. 13 C 50041, 2013 WL 3672964, at *2 (N.D.Ill.
> July 12, 2013), nor are they "meant to be traps in which the lack of an encyclopedic
> memory commits an organization to a disadvantageous position," *Brown v. W.
> Corp.*, No. 8:11CV284, 2014 WL 1794870, at *1 (D.Neb. May 6, 2014).

*Trustees of Chicago Reg'l Council of Carpenters Pension Fund v. Drive Constr., Inc.*, No. 1:19-

CV-2965, 2023 WL 415542, at *4 (N.D.Ill. Jan. 25, 2023). Dr. Alexander was not expected to

memorize thousands of pages of records and she repeatedly expressed a willingness to answer

questions about any records plaintiff's counsel desired to present.[5] This was sufficient.

Finally, while plaintiff may not like Dr. Alexander's answers as to why each of the 41

exemplars were delayed treatment, her Rule 30(b)(6) testimony on this point remained consistent

throughout her deposition in this matter *and* in *Martinez*. Specifically, Dr. Alexander repeatedly

explained in her deposition in this matter:

> I also have testified numerous times that my answer in terms of why a patient . . .
> put in a Health Service Request Form and why a patient was scheduled on a
> particular date is contained within that year, 2018 or 2019, at the time in which that
> healthcare professional actually took action and scheduled that particular patient.
>
> The information is not information that is documented. The reason why they picked
> a particular date is not – is not documented and thus all we have to rely on at this
> particular point, three to four years later, is what is contained within the medical
> record and the scheduling record.

---

[5] Although the deposition was taken remotely, the transcript reflects that plaintiff's counsel had the ability
to present exhibits to Dr. Alexander – and did in fact present numerous exhibits – on both dates of her
deposition. (*See, e.g.*, Dckt. #265-33 at 10; Dckt. #265-34 at 4).

(Dckt. #265-34 at 20; *see also Id.* at 11 ("There is a reason.  Unfortunately, why a particular date was chosen is contained within that time frame.")).  As defendant explains in detail, this response is also entirely consistent with Dr. Alexander's prior deposition testimony in the Martinez matter.  (*See* Dckt. #265 at 9-10 (providing more than 50 instances where Dr. Alexander provided similar testimony)).  Notably, as defendant further points out, plaintiff Martinez, represented by the same counsel as Clay, did *not* seek sanctions for Dr. Alexander's identical responses in *Martinez* regarding reasons for delays in treatment being contained during the relevant time frame.  (*See* Dckt. #132 in 19-cv-4348) (seeking additional time to complete Dr. Alexander's deposition in *Martinez*, but describing the testimony she had given thus far as "critical" to plaintiff's case)).  More importantly, where specific medical and scheduling records *have* reflected possible reasons for delays – for example an inmate's refusal of treatment – defendant has properly identified those records in its responses to plaintiff's interrogatories and requests for admission.[6]  (*See* Dckt. #265 at 5-7.)

Simply put, Dr. Alexander's testimony does not – as plaintiff contends – require that Cook County enter into stipulations that it "does not have an explanation for the delays," and plaintiff's concern that it "leaves open the door for the defendant at trial to come forward with an explanation for the delay[s]" flows from a "misunderstand[ing] how testimony pursuant to Rule 30(b)(6) binds a party."  *Keepers, Inc. v. City of Milford*, 807 F.3d 24, 34–35 (2d Cir. 2015).  Indeed, while "testimony under Rule 30(b)(6) binds a corporation in the same sense that any individual deposed under Rule 30(b)(1) is 'bound' by his or her testimony," *Mobile Now, Inc. v. Brightstar US, LLC*, No. 19 C 5241, 2021 WL 2894168, at *7 (N.D.Ill. July 9, 2021), a "Rule 30(b)(6) deposition produces evidence, not judicial admissions."  *Cat Iron, Inc. v. Bodine Env't*

---

[6] And, again, Dr. Alexander was willing to answer any questions about such records as the Rule 30(b)(6) designee to the extent that plaintiff's counsel presented her the records.

*Servs., Inc.*, No. 10-CV-2102, 2011 WL 2457486, at *8 (C.D.Ill. June 15, 2011), *quoting First Internet Bank of Indiana v. Laws. Title Ins. Co.*, No. 1:07-CV-0869-DFH-DML, 2009 WL 2092782, at *4 (S.D.Ind. July 13, 2009); *see also Sommerfield v. City of Chicago*, No. 08 C 3025, 2014 WL 12802632, at *3 (N.D.Ill. Mar. 18, 2014) ("Seventh Circuit precedent holds that Rule 30(b)(6) does not absolutely bind a corporate party to its designee's recollection.") (citing *A.I. Credit Corp. v. Legion Ins. Co.*, 265 F.3d 630, 637 (7th Cir. 2001)). Thus, plaintiff's attempt to bind Cook County with stipulations in his favor based on Dr. Alexander's Rule 30(b)(6) testimony is misplaced.

This ruling does not, however, leave plaintiff without remedies. "Testimony given at a Rule 30(b)(6) deposition is evidence which, like any other deposition testimony, can be contradicted and used for impeachment purposes." *LG Elecs. v. Whirlpool Corp.*, No. 08 C 242, 2010 WL 3714992, at *1 (N.D.Ill. Sept. 14, 2010), *quoting A.I. Credit Corp.,* 265 F.3d at 637 ; *see also Keepers*, 807 F.3d at 35 ("[A] party whose testimony 'evolves' risks its credibility, but that does not mean it has violated the Federal Rules of Civil Procedure."). Plaintiff will be free to attack Dr. Alexander's testimony as he sees fit, but any decision as to the weight to afford that testimony is for the finder of fact. And of course, to the extent that Cook County ever attempted to provide a reason for treatment delays at summary judgment or trial based on evidence not properly disclosed during discovery, plaintiff could take appropriate measures to seek to bar defendant's reliance on such evidence.

For all of these reasons, Dr. Alexander was adequately prepared to serve as Cook County's Rule 30(b)(6) designee and sanctions are not appropriate.

### C. Plaintiff's counsel's conduct at Dr. Alexander's deposition and in his representations to the Court regarding the parties meet and confer efforts do not warrant sanctions.

For its part, Cook County seeks sanctions pursuant to Rule 30(d)(2) for plaintiff's counsel's conduct at Dr. Alexander's deposition. Citing the parties' understanding that her testimony would mirror her prior testimony in *Martinez* and essentially be the same for each of the 41 exemplars, defendant argues that plaintiff's counsel "unreasonably prolonged" the deposition when he still questioned her for ten hours over two days. Defendant also seeks sanctions pursuant to the Court's inherent authority for what it views as misrepresentations in plaintiff's counsel's descriptions of the parties' meet and confer efforts before the initial motion for sanctions was filed. Defendant requests sanctions in the way of fees and costs incurred in responding to the motion and an order directing plaintiff to compensate Dr. Alexander for her 16 hours of testimony in this matter and *Martinez.* For the following reasons, the Court declines defendant's request for sanctions.

First, although the parties' initial intent and hope was to streamline Dr. Alexander's deposition based on her prior testimony in *Martinez*, at a minimum, the parties agreed that her deposition would be completed in ten hours, which it was. While plaintiff's counsel certainly could have expedited the process when it became abundantly clear that Dr. Alexander's responses would be similar for each of the 41 exemplars, plaintiff was entitled to make his record as to each exemplar within the ten hours agreed to by the parties. Counsel's conduct in this regard does not warrant sanctions under Rule 30(d)(2), the purpose of which is to prevent conduct that "impedes, delays, or frustrates the fair examination of the deponent."

Second, defendant is correct that "courts possess an inherent authority to sanction litigants for misconduct." *Mohammed v. Anderson*, 833 Fed.Appx. 651, 654 (7th Cir. 2020)

(citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991)); *see also Ramirez v. T&H Lemont, Inc.*, 845 F.3d 772, 776 (7th Cir. 2016) (noting that pursuant to "the inherent authority to manage judicial proceedings and to regulate the conduct of those appearing before it," a court "may impose appropriate sanctions to penalize and discourage misconduct.")). Nonetheless, "a district court must show restraint in exercising its inherent sanctioning power and may do so only if it finds that a party 'willfully abused the judicial process or otherwise conducted the litigation in bad faith.'" *Mohammed*, 833 Fed.Appx. at 654, *quoting Ramirez*, 845 F.3d at 776. In this instance, the Court finds that no such willful or bad faith conduct occurred. Instead, based on the Court's review of counsel's e-mails and attempts to meet and confer regarding the two proposals plaintiff put forward to resolve this dispute without further intervention (*i.e.*, the stipulations and a deposition of another designee), it appears there was simply an utter breakdown in effective communication.[7] Such a breakdown in communication does not amount to a willful abuse of the judicial process warranting sanctions under the Court's inherent authority.

Lastly, the Court notes that the parties' submissions illustrate that counsel have perhaps reached the end of their tether in this protracted discovery process. But for the sake of their clients in this matter, and any related matters, counsel are reminded of the civility expected of them as members of the bar and must proceed with good faith and open communication in any discovery disputes going forward. *See Weeks v. Samsung Heavy Indus. Co.*, 126 F.3d 926, 946

---

[7] For example, it appears that plaintiff's counsel believed the e-mail describing the proposed stipulation *was* the stipulation, whereas defense counsel expected plaintiff's counsel would draft up a more detailed stipulation he could present to his clients. (*See* Dckt. #259-5). As another example, plaintiff's counsel apparently mistook defense counsel's request for a stipulation to show his client as a "delay tactic" and an unwillingness to participate in a meet and confer. (*See* Dckt. #270 at 6).

(7th Cir. 1997) ("[C]ivility in litigation is extremely important to the practice of law in this Circuit and in all other courtrooms.").

**CONCLUSION**

For the foregoing reasons, plaintiff's motion for sanctions, (Dckt. #259), and defendant's cross-motion for sanctions, (Dckt. #265), are denied.

**DATE: June 27, 2023**

Jeffrey T. Cummings
**United States Magistrate Judge**

!

12
